## Ed. Dooling *et al.* v. State.

No. 243.   Opinion Filed February 11, 1910.

(106 Pac. 982.)

1. **APPEAL—Failure to Except in Lower Court.** ·An error, not excepted to during the trial or in the motion for new trial, and urged for the first time in this court, will not be reviewed unless fundamental and clearly deprived the accused of a substantial right. ·

2. **INSTRUCTIONS—Province of Jury.** The instructions· of the trial court should apply the law to the competent evidence as offered by the state and the accused, and leave the jury to determine as to what facts and circumstances are established by the evidence.

3. **APPEAL—Harmless Error — Instructions.** ، An instruction improper and contrary to the settled doctrine of this court will not be held reversible error where it is manifest, on consideration of all the instructions given, the testimony ·of the accused, and the verdict of the jury, that such an instruction did not work to the prejudice of the accused, ·or deprive him of any substantial right.

4. **APPEAL—Review—Instructions.** The instructions must be considered in connection with, and applied to, the evidence in the case in which they are given. An instruction harmless in one case may be prejudicial in another, ·depending upon the facts of each case. ·

(Syllabus by the Court.)

*Error. from District Court, Choctaw County; D. A. Richardson, Judge.*

Ed. Dooling and W. N. Campbell, the plaintiffs in error here, who were the defendants in the trial court, were tried at the March term of the district court of Choctaw county, charged with assault with intent to kill. · They were convicted of assault to inflict bodily harm, and sentenced to imprisonment in the territorial prison at Lansing, Kan., at hard labor for a term of two years and six months, and to pay the cost of the prosecution. The case is before us on appeal. Affirmed.

*Utterback & Hayes,* for plaintiffs in error.—Citing: *State v. Foutch* (Tenn.) 34 S. W. 423; *Brumlley v. State,* 21 Tex. App. 223; *People v. Maughs* (Cal.) 86 Pac. 190; *People v. Van Eman* (Cal.) 43 Pac. 520; *Wright v. Commw.,* 85 Ky. 123; *Buckley v. State,* 62 Miss. 707; *People v. Norrego* (Cal.) 95 Pac. 381; *Hartford v. State,* 96 Ind. 461.

*Charles West,* Atty. Gen. and *E. G. Spilman,* Asst. Atty. Gen., for the State.—Citing: *State v. Crank* (S. C.) 23 Am. Dec. 117; *Stevens v. State,* 42 Tex. Crim. App. 154; 14 Cent. Dig., title "Criminal Law," sec. 1387; *Robinson v. Territory,* 16 Okla. 241; *State v. Harper,* 142 Mo. 478; *Kirk v. Territory,* 10 Oka. 46.

OWEN, JUDGE.   It is fair in the outset to say that the attorneys appearing for the defendants here did not conduct the trial in the lower court.   In their brief filed they urge four assignments of error.

The first of these is the action of the trial court in refusing to allow the defendants, upon demand of a severance, to elect which defendant should be placed upon trial first.   We find that the record fails to disclose any exception on the part of the defendants to the ruling of the court on this proposition.   The record discloses that a motion for severance was filed and by the court allowed, and, it appearing that Campbell's name appeared first on the indictment, the court ordered said defendant to be placed first on trial.   The defendants then withdrew their motion for a severance.   There was no exception saved to the action of the court in directing Campbell to be placed on trial first.   This is not such fundamental error that this court must reverse without exceptions having been saved in the lower court.

Under the second assignment of error, counsel complain of the following instruction:

"The jury are instructed that if they believe from the evidence in this case that the said Paul Peters assaulted the said Ed. Dooling without fault or provocation on the part of the said Ed. Dooling, and struck him with his fist, and that someone cried out to the defendant to watch out, and that the said Ed.

Dooling, as a reasonable man, then and there had reasonable cause to apprehend on the part of the said Paul Peters a design to kill him, the said Ed. Dooling, or to do him some great bodily injury, and that there was reasonable cause for the said Ed. Dooling to apprehend immediate danger of said design being accomplished, and that for the purpose of averting such apprehended danger to himself, and not in a spirit of revenge, he cut the said Paul Peters with a knife, in good faith believing it necessary for him to so cut in order to protect himself from such apprehended injury, then, in that event, the act of said Ed. Dooling was not felonious, but was justifiable, and it would be your duty to acquit this defendant."

Counsel urge that this instruction was error because of the language "without fault or provocation on the part of the said Dooling," insisting that this deprives the defendant of the right of self-defense, for the reason that the jury might have understood and considered that any language on the part of Dooling which might have to some extent brought on the difficulty was such fault or provocation as would deprive him of his right of self-defense, and, further, that this instruction was error for the reason that the jury might have understood that the apprehended danger to Dooling should be viewed in the light of circumstances as the jury understood them, and not as they appeared to the defendants at the time. Upon a consideration of all the evidence in the case, and especially that on the part of the defendants, we can see no error in this instruction. The testimony on the part of Dooling and Campbell is to the effect that Dooling had in ordinary language reminded Peters that he had not paid a debt of $2 which he had promised to pay on that day. Whereupon Peters assaulted Dooling by grabbing him in the shirt collar, and by striking him in the face with his fist and that he threw his right hand back to his hip as if to draw a pistol. The defendant Campbell then struck Peters over the head with a six-shooter to prevent his shooting Dooling, and the defendant Dooling struck him with a knife, which he had been using in trimming a cork. This instruction applied the law to the facts disclosed by the evidence. From that portion of the instruction:

"And that the said Ed. Dooling, as a reasonable man, *then and there* had reasonable cause to apprehend on the part of the said Paul Peters a design to kill him, the said Ed. Dooling, or to do him some great bodily injury, and that there was reasonable cause for the said Ed. Dooling to apprehend *immediate* danger of said design being accomplished, and that for the purpose of averting *such* apprehended danger to himself, and not in a spirit of revenge he cut the said Paul Peters with a knife, in good faith *believing it necessary* for him to cut in order to protect himself from *such apprehended* injury, *then,* in that event, the act of said Ed. Dooling was not felonious, but was justifiable and it would be your duty to acquit this defendant,"
the jury must have understood the court to mean that the apprehended danger should be considered from the defendant's standpoint as it appeared to him at the time. The court used the language, *"then and there* had reasonable cause to apprehend."

The third assignment is that the court erred in giving instruction No. 17, as follows:

"The court further instructs the jury, however, that the law allows a person to use only such force as may be necessary to overcome the force used against him, or which he believes is being used or is about to be used against him; and if you should believe from the evidence in this case that the said Paul Peters did assault the said Ed. Dooling and the said Bogy Campbell, but should further find from the evidence in this case, beyond a reasonable doubt, that the said Ed. Dooling and the said Bogy Campbell, or either of them, had overcome the said Paul Peters, and had the said Paul Peters within their power, and in such a condition that he could do no injury to them or either of them, and that thereupon the said Bogy Campbell held the said Paul Peter's hands while the said Ed. Dooling stabbed him with a knife, with the intent to kill the said Paul Peters, and said knife was then and there a deadly weapon, then it would be your duty to find both the defendants guilty of the crime of assault with intent to kill."

Counsel urged that this instruction was error because it left the jury to pass upon whether or not the force used was more than necessary, or whether or not the defendants had overcome Peters and had him where he could not commit further injury, after the evidence was all in, and that the court should

have instructed the jury that in arriving at the force necessary they should look to the defendants' standpoint of view at the time the force was used. It must be remembered that this instruction was one of several that was given by the court, and the instructions are to be considered as a whole, and not as separate and distinct propositions. In instruction No. 13, above quoted, the court properly instructed the jury on the theory of the defense. In other instructions given and not complained of the jury were properly instructed as to the presumption of innocence, the burden of proof, and reasonable doubt. This instruction considered together with the other instructions given, was a correct application of the law to the facts as proved, and, in addition, this instruction was as to the law governing assault with intent to kill. The defendants were acquitted of this charge in the conviction of the lower offense of assault to inflict bodily harm.

Under the fourth assignment of error counsel urge that the case should be reversed because the court gave instruction No. 26 in the following language:

"The court instructs you that the defendants are competent witnesses in this case, and you must consider their testimony in arriving at your verdict in connection with all the other evidence in the case. You will determine the credibility of the defendants as witnesses and the weight and value to be given to their testimony by applying to them and to their testimony the same test which you apply to every other witness, taking into consideration their demeanor on the witness stand, their manner of testifying, their inclination to speak the truth or otherwise, the reasonableness or unreasonableness of their statements and their interest in the result of this trial, and you will give their evidence such weight as you deem it entitled to have."

Similar instructions have been condemned by this court in the case of *Green v. U. S.*, 2 Okla. Cr. 55, 101 Pac. 112; *Hendrix v. U. S.*, 2 Okla. Cr. 240, 101 Pac. 125; *Fletcher v. State*, 2 Okla. Cr. 200, 101 Pac. 599; *Reed v. U. S.*, 2 Okla. Cr. 652, 103 Pac. 371; *Crow v. State, ante,* p. 428, 106 Pac. 556.

It is a matter of common knowledge that the United States courts in the Indian territory prior to statehood in the trial of

all criminal cases gave that instruction. While the custom in the United States courts does not cure the evil of such an instruction, yet it does afford a reason why the trial court should not be criticised in following the custom soon after statehood, and before a different rule was announced by this court.

The instruction given in this case is a clear and concise statement of the rules by which the jury should be governed, and the only thing which can be complained of is that these rules are directed especially to the defendants' testimony. Did it work to their prejudice, or deprive them of a fair and impartial trial? If it did, the case should be reversed; and if there should be a reasonable doubt, the defendants should have the benefit of the doubt and the case reversed. But after a careful consideration of the evidence, we are convinced, beyond a reasonable doubt, that the defendants were not prejudiced by this instruction. The testimony on the part of the state was to the effect that the defendants, the person assaulted, and others were drinking in a pool hall in the town of Hugo; that the defendant Campbell was standing near Peters, and without any warning or provocation, struck Peters over the head with a six-shooter, knocking him down on a barrel, and that he then grabbed Peters' hands and held them above his head while his codefendant, Dooling, struck Peters with a knife. The defendants' testimony was to the effect: That earlier in the night Dooling had requested Peters to pay him $2 which he had borrowed the day before, and that Peters refused to pay, and that Dooling ordered him out of the house. Dooling was proprietor of the pool hall. That later in the night, Peters, in company with John Harrison, returned to the pool hall, and the crowd began drinking whisky taken from Harrison's pocket. That Dooling started to leave the room, when Harrison and Peters started to follow. That someone warned Dooling to "look out," and said to Peters and Harrison, "Don't double up on him." Thereupon Dooling turned and came back to the bar where the crowd were drinking. Harrison said: "Stand back, pardner," and made as if to draw a pistol. Then Peters assaulted Dooling by catching him in the throat, and by

striking him in the face, and by throwing his hand to his hip pocket as if to draw a pistol, whereupon Campbell, believing that Peters was about to draw a pistol, struck him over the head with a six-shooter to prevent Peters shooting Dooling, and that about the same time Dooling, believing that Peters was about to shoot him, cut Peters with a knife. The proof on the part of the state, uncontradicted, would have justified the jury in finding both defendants guilty of assault with intent to kill. The jury evidently believed the version given by the defendants, or they would not have found them guilty of assault to inflict bodily harm. There can be no question on the testimony of the defendants but that they used greater force than at the time seemed necessary. There is no proof that Peters was any larger or more powerful than Dooling, and nothing from which the defendant Dooling would have reason to believe that Peters was able to inflict great bodily harm upon him, unless it was that Peters was seen to throw his hand back to his hip pocket. Either Campbell or Dooling could easily have prevented Peters from drawing his pistol by grabbing him, as the proof shows that one of the by-standers grabbed Harrison and disarmed him. The evidence discloses that Peters was cut several times, and that he was cut after he was struck over the head with the six-shooter, and that the lick over the head by the six-shooter knocked him down over a barrel. The jury saw all the witnesses, observed their demeanor on the stand, and the question as to the amount of force used and the necessity of same, as it appeared to the defendants at the time, was squarely submitted to the jury in the instructions given, and every reasonable doubt favorable to the defendants under the testimony must have been indulged by the jury in arriving at a verdict of assault to do bodily harm. The jury returned a verdict without fixing the punishment. The court, after hearing all the evidence, fixed the punishment at two years' and six months' imprisonment. There is no contention here that the punishment was excessive. While we condemn the practice of the courts in giving instructions similar to the one given here,

3 Cr.—32

and as was said by the presiding judge of this court, in passing on a similar question in the case of *Fletcher v. State, supra,* we warn the courts of Oklahoma from giving such instructions in the future, which would cause the reversal of cases, that but for such instruction would be affirmed. It is not every improper instruction that entitled the defendant to a new trial. On the trial of this case the instruction complained of here was not excepted to at the time it was given, neither was it mentioned in the motion for a new trial, but was objected to for the first time in this court.

This court has repeatedly held that where no objection is taken at the time the instruction was given, and no objection made in the motion for a new trial, this court will reverse only on fundamental error. In the case of *Reed v. United States,* 2 Okla. Cr. 652, 103 Pac. 371, this court reversed the case on an instruction that was in some respects similar to the one complained of here. The instruction there did not correctly state the rules, as did this one, and more particularly singled out the defendant, and the defendant at the time saved his exception, thereby calling the attention of the court to the error complained of. It is always fair to the trial court to direct his attention to the error complained of at the time that it may be corrected before the case is finally submitted to the jury. While the instructions are by statute a part of the record, as was held by this court in the case of *Reed v. United States, supra,* yet the record where no objections appear will be examined for fundamental errors only.

Inasmuch as the judgment of the lower court was that the defendants be confined in the territorial prison at Lansing, Kan., and the state prison having since been provided for, the judgment of the lower court is corrected to confinement in the state penitentiary, but in all other things affirmed.

FURMAN, PRESIDING JUDGE, and DOYLE, JUDGE, concur.