CORBETT-BARBOUR DRILLING CO. et al. v. HANNA.

No. 33954.   July 18, 1950.

Rehearing Denied Sept. 19, 1950.

*222 P. 2d 376.*

Monnet, Hayes & Brown, of Oklahoma City, for plaintiffs in error.

Howard K. Berry and James W. Berry, both of Oklahoma City, for defendant in error.

ARNOLD, V.C.J. This is a damage action for personal injury suffered by plaintiff by reason of the alleged negligence of defendants.

Plaintiff alleged that defendants violated certain provisions of the Oklahoma City Traffic Code (Ordinance No. 5791) which were expressly set forth, and that such acts of negligence on the part of defendants were the proximate cause of the injury.

Defendants alleged that the accident occurred solely because of the negligence of the driver of the automobile in which the plaintiff was driving; that the negligence of the driver was imputable to plaintiff; that plaintiff was guilty of contributory negligence in that while under the influence of intoxicating liquor himself he rode with a driver who was under the influence of intoxicating liquor, failed to maintain a proper lookout for his own safety and grabbed the steering wheel of the automobile causing it to strike defendants' loaded trailer.

The testimony of plaintiff tended to show that plaintiff, E. J. Hanna, was riding as a passenger in a 1936 model Ford automboile owned by his father C. W. Hanna and driven by George Byrd; that the defendant Corbett-Barbour Drilling Company was the owner of a truck and semi-trailer designed for hauling oil field equipment; that same at the time of the collision was loaded with oil field pipe and under the control of Bert Carrington, an employee of the drilling company; that on the evening of April 4, 1947, Carrington parked the truck with its loaded trailer in the 300 block on the north side of S. E. 29th street in Oklahoma City parallel with but more than 18 inches from the curb; that the truck was facing west and on the right side of the street but was not equipped with any signal devices; that the drill stems extended more than 6 feet beyond the rear end of the trailer; that Carrington left the truck and trailer in this condition and position when he went to a hotel for the purpose of spending the night; that at about midnight on the above date plaintiff and George Byrd were proceeding west on S. E. 29th street at a speed of approximately 15 or 25 miles an hour when their car collided with the rear end of said loaded trailer, resulting in serious personal injuries to plaintiff necessitating hospitalization, medical care and the removal of a portion of his skull on the right side.

The evidence of defendants was in direct conflict with that of plaintiffs in many respects.

There was a verdict and judgment in favor of the plaintiff.

For reversal defendants rely upon four propositions thus stated in their brief:

"(1) In refusing to give defendants' requested instructions Nos. 3 and 8, the court failed to instruct on the theory of the defendants' defense. For that reason, the rulings were prejudicial to the defendants and constituted reversible error.

"(2) Section 17 of Title 3 of Ordinance 5791 of the Ordinances of Oklahoma City was not admissible in evidence. The court in admitting it in evidence and in instructing as to the effect of its violation committed reversible error.

"(3) There was no evidence sufficient to show a violation of Sections 22 and 23 of Title 4 of Ordinance 5791 of the Ordinances of Oklahoma City, Oklahoma. It was, therefore, reversible error for the trial court to instruct that such ordinances were in effect and that the effect of the violation of those ordinances was to establish that the defendants were negligent per se.

"(4) Even though there was sufficient evidence to support a finding that the defendants had violated Sections 22 and 23 of Title 4 of the Ordinances of Oklahoma City, Oklahoma, the violation of those ordinances could not have been the proximate cause of the collision. The giving of the tenth instruction of the court, therefore, was erroneous."

Under their first proposition the defendants contend that the court failed and refused to instruct the jury on one of its defenses, to wit: that the negligence of Byrd by reason of his intoxication was the sole cause of the collision and resulting injury to plaintiff. To cure this alleged defect in the instructions defendant requested the giving of their instructions 3 and 8. They are as follows:

"No. 3. You are instructed that an automobile driver upon the streets and highways of this state has the duty of keeping a lookout for other vehicles that might be upon said streets or highways and to use reasonable care in so driving his car that he will avoid striking such vehicles, whether they be moving or parked, and you are further charged that Title 47, O. S. A. Sec. 92, provides as follows:

" 'Any person driving a vehicle on a highway shall drive the same at a careful and prudent speed not greater than nor less than is reasonable and proper, having due regard to the traffic, surface and width of the highway and of any other conditions then existing, and no person shall drive any vehicle upon a highway at a speed greater than will permit him to bring it to a stop within the assured clear distance ahead.'

"In this connection, you are charged that if you find from the evidence that the driver of the car in which plaintiff was riding was guilty of negligence in any of these respects and that such negligence was the sole, proximate cause of the accident, then your verdict should be in favor of the defendants and against the plaintiff."

"No. 8. You are instructed that the driving of an automobile upon the streets and highways of this state while under the influence of intoxicating liquor is negligence per se, that is negligence in and of itself, and as a matter of law."

It is contended by plaintiff that the theory of defense made was adequately included in the instructions given.

The court in its statement of the issues explained to the jury that one of the defenses made by the defendants was that the negligence of the driver Byrd was the sole cause of the collision. It defined proximate cause and told the jury that no negligence was actionable unless it directly caused the collision and resulting injury. The court specifically instructed the jury as to the duty of the driver of a car under 47 O. S. A. §92 in the same language as that offered by the defendants in its proffered instruction No. 3.

By instruction 18 the court in effect told the jury that if George Byrd, driver of the colliding car, was under the influence of intoxicating liquor, and as a result thereof in a condition which rendered him incapable of operating his vehicle with reasonable care and skill and by reason of that condition failed to operate his car with reasonable care and skill, he was guilty of negligence.

By instruction 15 the jury was told that if it found from the evidence that George Byrd's negligence was the sole proximate cause of the accident, then their verdict should be for the defendants.

By these instructions we think the defense of defendants that, if the violation of 47 O. S. A. §93 and 10324, O. S. 1931, by Byrd, the driver of the car,

was the sole cause of the collision the plaintiff could not recover against the defendants, was clearly submitted to the jury.

Defendants present their argument in support of their second proposition under two subdivisions. Their first contention is that since the ordinance was not passed to protect the traveling public from the dangers of highway travel, section 17 was not admissible in evidence for the purpose of showing that its violation by the defendants was negligence.

In support of this contention defendants cite and rely upon three decisions by this court which announce the rule that a violation of a duty imposed by law is negligence per se only when the neglect to perform that duty is the proximate cause of injury and the person injured is one of the class intended to be protected by the enactment. (Sinclair Prairie Oil Co. v. Stell, 190 Okla. 344, 124 P. 2d 255; Champlin Refining Co. v. Cooper, 184 Okla. 153, 86 P. 2d 61; Larrimore v. American National Ins. Co., 184 Okla. 614, 89 P. 2d 340.) An examination of these authorities discloses their inapplicability to the facts in the instant case.

Though Ordinance No. 5791 was not introduced in evidence, the defendants discuss numerous sections of the ordinance for the purpose of showing that, while some were intended to protect members of the traveling public from the dangers of obstructions on the streets and highways, others have no relation to the safety of the traveling public. In the latter category defendants place section 17 of the Ordinance.

We cannot concede that the latter provision of section 17 of Ordinance No. 5791 was not intended to protect the traveling public from the danger of running into objects on the highway. Said section reads:

"Section 17. Night-Time Parking. No vehicle shall be parked on any highway within the business loop of Oklahoma City, Oklahoma, as defined herein, between the hours of 2:00 o'clock A. M. and 5:00 A. M., except in case of an emergency. No commercial vehicle shall be parked on any highway in the City of Oklahoma City outside of the business loop, as herein defined, between the hours of 8:00 o'clock P. M. and 4:00 o'clock A. M., except for the necessary time to load and unload."

It will be noted that by the first provision of the foregoing section of the ordinance, *no vehicle* shall be parked on the streets of the business loop of Oklahoma City for the very limited period of 2:00 a. m. to 5:00 a. m., except in case of emergency. Our common knowledge makes it obvious that this provision was intended for the convenience of the city and not for the protection of the public against the dangers of highway traffic. The latter provision that only a certain class of vehicles, to wit: *commercial vehicles,* those by common knowledge known ordinarily to be larger and more obstructive of view than vehicles generally, shall be parked on any highway outside the business loop, where by common knowledge the streets are known to be generally much narrower than in the business loop, between the hours of 8:00 p. m. and 4:00 a. m., that is, generally speaking, throughout the nighttime, except for necessary time to load and unload. We think the section on its face shows that the first provision is not a regulatory measure for the protection of the public against the dangers of traveling on the highway while the latter one was for that very purpose. The first provision was intended to relieve the streets in the business loop of cars at a convenient and limited time so the city could clean the streets, while the latter provision was intended to relieve the residential area of parked cars of a type determined by the legislative body of the city no doubt to be a class most productive of highway collisions.

Under the second subdivision of the argument under the second proposition it is contended by defendants that if the purpose of the ordinance is to protect the traveling public, a class of

which the plaintiff was a member, and if the prevention of injuries, such as that received by the plaintiff is the evil the ordinance was designed to prevent, the ordinance is void because discriminatory and in violation of the Fourteenth Amendment of the Constitution of the United States.

The class of vehicle regulated by said section 17, to wit: "commercial vehicles," is that type or make of vehicle designed for and adapted to commercial purposes regardless of the use to which such a vehicle is put at any particular time. If it is a vehicle of the type or kind commonly known as a commercial vehicle, it falls within the inhibition of the ordinance. Trucks of all kind fall within the class.

It was alleged in plaintiff's petition that this truck-trailer as loaded and used was a commercial vehicle and the evidence particularly describes the vehicle as loaded. Under the definition hereinbefore given of a "commercial vehicle" under section 17, supra, there can be no dobut that the vehicle in question here fell within the ban of said section.

The legislative body of a municipality may make classifications in the application of an ordinance which are relevant to the legislative purpose. Keaton v. Oklahoma City et al., 187 Okla. 593, 102 P. 2d 938; Martin v. Rowlett, 185 Okla. 431, 93 P. 2d 1090; Ex parte Duncan, 179 Okla. 355, 65 P. 2d 1015; Calkins v. Ponca City, 89 Okla. 100, 214 P. 188; Greiner v. City of Yale, 77 Okla. Cr. 135, 139 P. 2d 606; Ex parte Walrod, 73 Okla. Cr. 299, 120 P. 2d 783. Such classifications are not prohibited by the equal-protection clause of the Federal Constitution where reasonable, not arbitrary, and based upon a fair and substantially different relation to the object of the legislation. Cotton Club v. Okla. Tax Comm., 195 Okla. 403, 158 P. 2d 707; Ex parte Strauch, 80 Okla. Cr. 89, 157 P. 2d 201; Harris v. State, 74 Okla. Cr. 13, 122 P. 2d 401; Skinner v. State of Okla. ex rel. Williamson, 316 U. S. 535, 86 L. Ed. 1655;

Old Dearborn Dist. Co. v. Seagram-Distillers Corp., 57 S. Ct. 139, 299 U. S. 183, 81 L. Ed. 109, 106 A.L.R. 1476.

We cannot say as a matter of law that the class of vehicle here designated is not reasonably and substantially different from other types of vehicles in its relation to the dangers incident to travel upon the highways. There is no discrimination as to owners of vehicles falling within the class. The legislative body of the municipality must have determined this to be true. The city may direct its law against what it deems the evil as it actually exists without covering the whole field of possible abuses. The inhibition as to commercial vehicles as a class as hereinbefore defined is not arbitrary or capricious, and must be sustained as a valid exercise of the police power of the municipality.

As we understand their argument in support of their third proposition the defendants contend that there was no evidence of illegal parking of the truck-trailer and that therefore the giving of instruction No. 10, telling the jury that a violation of sections 22 and 23 of the ordinance was negligence per se, constituted reversible error.

Section 22 provides:

"Parallel Parking. All vehicles shall be parked parallel to the curb on the right side of the highway in the direction of travel with the right front and rear wheels not more than eighteen (18) inches from the curb, except where parking at an angle of forty-five degrees may be especially provided for herein."

Section 23 provides:

"Stopping on Highway. Motor vehicles when brought to a stop on a highway shall be parked not more than eighteen (18) inches and as near the curb on the right side of the highway as possible."

It is not contended that a violation of a city ordinance regulating traffic and designed for the purpose of protecting the users of the highways

against the dangers of highway travel is not negligence per se. The court told the jury specifically in the instructions that any negligence found by them as a result of a violation of the foregoing provisions of the ordinance must be the proximate cause to be actionable.

We think that considering all of the testimony of the witnesses as to the position of the trailer before and after the accident together with the physical facts disclosed presents a conflict in the evidence which it was the province of the jury to resolve. There was testimony showing that prior to the accident the trailer was parked within the limits prescribed by the ordinance and there was testimony that after the collision the right rear wheels of the trailer were from 2 to 2½ feet out from the curb, while there was some testimony that after the accident the right rear wheels of the trailer were still within the prescribed proximity to the curb under said ordinance. It was plaintiff's theory and contention that if the light Ford convertible traveling at a speed of some 15 to 20 miles an hour struck the left rear of the trailer with its right front fender with sufficient force to move it, that the direction of the force so exerted would have moved the trailer toward and not away from the curb, and that therefore the location of the debris on the pavement at the point of impact demonstrated that when the collision occurred, the rear wheels of the trailer were not within the prescribed parking limits. The physical facts disclosed by the record in connection with the accident lend some weight to this contention of plaintiff, and we think all the facts and circumstances sufficiently raised the question of illegal parking of the truck-trailer to make its determination a question of fact for the jury which is authorized to draw reasonable inferences from the evidence before it.

Defendants' fourth and last proposition is based upon the assumption that even if there were evidence of a violation of sections 22 and 23 of Ordinance No. 5791, the violation was not the proximate cause of the accident because the occupants of the Ford convertible did not see the parked trailer and the collision would have occurred anyhow. The evidence discloses without contradiction that there was no signal light on the trailer, no flares on the pavement adjacent thereto, and nothing to call the attention of the traveling public to its existence and location.

The jury resolved these issues against the defendants. We cannot say that its determination thereof was not based upon testimony reasonably tending to show the violation of the foregoing provision of the ordinance and that said violation was proximately related to the occurrence of the collision and resulting injury.

Affirmed.

WELCH, CORN, LUTTRELL, HALLEY, and JOHNSON, JJ., concur.

Rehearing Denied Sept. 19, 1950.